# Eberts *versus* Thompson.

1. A. contracted to sell to B. the undivided one half of a tract of land for $1,200, payable as follows: $300 in cash and "B. to let A. have all the timber on said land for the other $900.' C. owned the other undivided one half of said tract of land. A. claimed from B. all the timber on the tract. B. offered him the timber sold him by said contract. In an action of ejectment by A. against B., *Held* that under the contract A. was entitled to take only the timber sold B. by said contract.
2. The court has no power in an action of ejectment, there being no question of law reserved to enter judgment *non obstante veredicto*.

May 5th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

[Eberts *v.* Thompson.]

ERROR to the Court of Common Pleas, of *Clearfield county*: Of January Term, 1886, No. 26.

This was an action of ejectment brought by Simon Thompson against John W. Eberts for the undivided one half of two hundred acres of land in Clearfield county.  Plea, not guilty.

The plaintiff claimed on his legal title.   The defendant set up as a defence the following written contract and asked for specific performance thereof:

Article of agreement made this 9th day of November, 1880, between Simon Thompson of the one part, and John W. Eberts, of the other part, viz: said Thompson agrees to sell to said Eberts the one undivided half of grist mill situated on Morgans' run Boggs, and the 200 acres of land connected therewith for the sum of $1,200, in manner following : $150 on or before the 1st day of April, 1881, and $150 on or before the 1st day of April, 1882, and to let said Thompson have all of the timber on said land down to 12 inches at the stump for the other $900.   Said Eberts to have possession on the 1st of April, 1881.

[Signed]          SIMON THOMPSON,
JOHN W. EBERTS.

Eberts claimed that under this contract Thompson was only entitled to the one undivided half of the timber, and that the contract only could reasonably relate to that half, as the other was then and is still owned by Smith, a third party, and that this was the explicit understanding at the time.   The timber was to be removed within three years from the date of the contract.  That this was the express agreement at the time, although not put in the contract, and that to enable Thompson to get off his half of the timber he, at Thompson's request, obtained from Smith consent in writing to cut his [Smith's] half and account to him for the proceeds, which paper Eberts exhibited to Thompson when he came to take possession.   He also showed an arrangement between himself and Smith, because of this contract, prior to the time he took possession, by which he was to account to Smith for his share of the tolls of the mill, and that he had paid the tolls accordingly, a portion of them having been paid through Thompson himself.

It was contended on the part of Thompson that he was entitled to all of the timber, under the contract; and that the written agreement was supplemented by a verbal agreement by which Eberts was to procure a release or conveyance from Smith of his interest in the timber to carry out the written contract.   He explained the fact of the possession by alleging that Eberts became his tenant under a verbal lease.  This allegation of a lease he set out in his abstract of title, filed under

a rule served on him for that purpose, and on the trial he testified that Eberts had leased the property from him.

The court, KREBS, P. J., instructed the jury, *inter alia*, as follows:

[For while the evidence would show that Mr. Eberts went to Mr. Thompson's place and offered him money, there was not such a formal tender of the money as would stop the running of interest upon the purchase money. So that if you should find, notwithstanding this contract, and the construction we put upon it, that these parties only meant that Thompson should have the half part of the timber, you will still have to determine the question of the purchase money—being the amount with interest to such a time—as you shall fix in your verdict —as it shall be paid by defendant.] . . . . . Unless this written contract was qualified by evidence in the case—by clear, precise, and indubitable testimony—so as to satisfy the jury beyond a doubt that they intended that Thompson should have but the half part of the timber—unless the jury find that by that kind of proof—beyond a doubt—then your verdict must be for the plaintiff, without fixing any amount at all. If you find from the testimony, by proof that is clear, precise and beyond a doubt, that Mr. Thompson was only to have half of the timber for the $900, then you find according to the written paper, filling in the amount of the purchase money, to wit: $300 with interest from the time it became due according to the contract, up to the time it should have been paid. The only purchase money you have to deal with is the $300—nothing else. If you find that Thompson was to receive half of the timber instead of all, by clear, precise and indubitable proof, then you fill up the blanks we have left—taking the $150 due on the 1st of April, 1881, and computing interest on that, then the $150 due on the first of April. 1882, and computing interest on it up to the time you say this money shall be paid. You have nothing to do with anything else.

If you find the contract was not that Thompson should have half of the timber, but that it means " all" the timber, then you just say " we find for the plaintiff."

The paper I gave you was only to be used in the event of your finding by clear, and indubitable proof, beyond a doubt, that Thompson was to have half of the timber for $900 and the $300 besides.

If you find that is proven in that way, then you take the $300 and count interest on it up to the time you say it shall be paid, whether it is one, two, three or six months. The time to be as you determine.

Verdict for the plaintiff for the premises described in the writ, to be released on the payment of $363 and costs, on or before the 1st April, 1885.

[Eberts *v.* Thompson.]

The defendant complied with the conditions by paying the money into court.

The plaintiff moved the court to enter judgment for the plaintiff *non obstante veredicto,*

The court, after hearing, directed the verdict of the jury to be amended by striking out all the conditional part so as to make it read, " We find for the plaintiff the premises described in the writ," filing the following opinion :

The plaintiff brought ejectment upon his legal title, and sought to recover the possession of the premises in dispute. The defendant set up as a defence against a recovery, a written agreement for the purchase of the premises sued for, and consequently sought in his defence to obtain a specific performance of this agreement and his right to have such a decree, is to be ascertained from the authorities and decisions which relate to that class of cases, in which the action of ejectment was found on a claim for specific performance of a contract.

The construction of the written agreement was for the court.  We did instruct the jury that under the contract the plaintiff was entitled to have from the defendant, " all the timber," on the 200 acres of land and not the timber on the undivided half part of the same ; and that as the defendant did not offer to show that he had conveyed " all the timber," or tendered a conveyance to the plaintiff of " all the timber " he was not entitled to specific performance of the agreement, and they must find for the plaintiff. We have found no reason to change our opinion as to the construction of this agreement. We refer to but one to support our view.   These men were both of more than average intelligence.   If they had intended to sell the undivided half interest in the mill and 200 acres of land for $300, and the plaintiff to retain the timber upon the undivided half part of the land, why would they have included the timber in the agreement at all?

It was alleged at the trial and we submitted to the jury the question, whether or not the parties in making this agreement, by the words, " all the timber " meant the timber upon the undivided half part of the premises or upon the entire premises, the jury by their verdict say that it was meant to give the plaintiff the timber upon the undivided half of the premises, and the learned counsel for the defendant has contended with great zeal and ability that the finding of the jury is conclusive. The authorities seem to us to have settled beyond controversy that when in an action like the present, the testimony is submitted to the jury, that in its effects it is but the trial of a feigned issue out of chancery.   Quoting from SHARSWOOD J., " if the evidence is too vague, uncertain or doubtful to establish the equity set up, even if believed, it is the duty of the

judge to withdraw it from the jury either by a nonsuit or a binding instruction in his charge as the case may require": Church v. Roland, 14 Smith, 441, and authorities there cited.

It is also settled law, as we believe, that the finding of a jury on a feigned issue is not binding on the court; they may disregard it, and make a decree without ordering another trial: Baker v. Williams, 4 Barr, 456; Johns v. Erb, 5 Barr, 232; Gray v. Simon, 2 Phila., 348.

In the present case therefore being an equitable ejectment, in which it becomes the duty of the judge trying the cause to administer the law as a chancellor sitting in equity, we are not concluded by the verdict of the jury upon the questions submitted to them, but must decide from the whole case whether or not the defendant shall have a decree for specific performance of his contract. We will not stop to inquire whether or not the defendant can have specific performance of the contract which he asks us to interpret differently from its reading by the aid of extrinsic evidence, and in effect to alter the contract. If the defendant's case turned upon that, we think we would be obliged to refuse a decree of specific performance: Jones v. Pennel, 1 Phila., 539; Hammer & Dauler v. McEldowney, 10 Wright, 334; McCann v. Pickup, 42 Legal Int., 286; 102 Mass. R., 33.

But we think this case must be decided upon another rule. It is contended by the defendant that he understood by the terms of the written agreement that he was to give the plaintiff "all the timber" on the undivided half part of the 200 acres of land. It is as strenuously contended on part of the plaintiff that he understood that the defendant was to convey or cause to be conveyed to him, "all the timber" on all the 200 acres of land. Each testifies to his understanding of what was in his own mind intended by the agreement. There is not, to our mind, that "clear, precise and convincing proof" of a mistake, that the law requires, so as to require us to reform the instrument. But the evidence offered by the plaintiff and defendant, if there is not downright, bold perjury on the one side or the other, indicates clearly that at the time of contracting, their minds did not meet understandingly. This we believe to be the correct conclusion, and there is much in the evidence on both sides to sustain this view. It reconciles the testimony and imputes perjury to neither. It is consistent with what occurred on the last of March or first of April, 1881, when they first met, five months after the agreement was written, and before they had time to "act a part" upon assumed facts, which did not in truth exist.

It is settled law, laid down not only in the text books and elementary principles, but by the authoritative decisions of

the court of highest jurisdiction, that if there be a serious doubt arising from the testimony whether the minds of the contracting parties met understandingly as to the subject matter of the contract, specific performance will be refused: Adam's Equity, 85; Pollock's Principles of Contract, 399; Cortelyon's Appeal, 6 Outerbridge, 576. This view of the case, and the one which seems to be the correct one, would cause us to conclude that this agreement of the 9th November, 1880, could not be specifically enforced.

But have we the power to amend the verdict of the jury and enter judgment as this conclusion would require of us? This has been frequently done both in the courts below and in the Supreme Court. In Byrne *v.* Grossman, 15 P. F. S., 319, it is said, "the court had an undoubted right to mould the verdict according to the requirements of the law, and therefore their order in setting aside that part relating to costs was not error." In Whiting *v.* Lake, 10 Norris, 349, the court below submitted the case to the jury, and after the jury had retired and returned to court with a verdict for the plaintiffs, the court refused to receive the verdict and instructed the jury to find for the defendant. This was assigned for error, but the court below was sustained. In Pardee *v.* Orvis, 7 Outerbridge, 451, the court below did substantially the same thing as was done in Whiting *v.* Lake, *supra*, and the Supreme Court affirmed its action. If we are correct in our construction of this written agreement, then under the evidence in this case the plaintiff was entitled to recover the premises sued for without conditions, the evidence offered on the part of the defendant not being sufficient in our judgment to move a Chancellor to reform the contract and decree specific performance of it as reformed. Our error was, in not giving binding instructions to the jury to find for the plaintiff for the premises sued for in the writ. To grant a new trial would require the attendance of the parties with their witnesses and would result in no different conclusion. For under the same evidence, with our views of the law, we would feel it our duty to give a binding instruction to the jury to find for the plaintiff. If, however, our construction of this written agreement is error, or if our amending the verdict is error, these errors can be corrected by a simple reversal, without a *venire de novo*, and thus all litigation be ended.

And we therefore do hereby direct the verdict of the jury to be amended, by striking out all that part thereof as is conditional, so as to make it read, "We find for the plaintiff the premises described in the writ," and we further order and direct judgment to be entered on the verdict as amended.

Judgment was accordingly entered thereon, whereupon the

defendant took this writ, assigning for error the order of the court amending the verdict, and that portion of the charge included within brackets.

*Murray* (*Gordon* with him), for plaintiff in error.—1. We maintain that Thompson could legally claim only half the timber by the contract itself:

This view is sustained: (1). By the situation of the title and the subject matter of the contract, which are to be "considered in aid of its interpretation." For even if there be no ambiguity in the contract, the court "must look at the circumstances under which it was made, as evidencing the intention of the parties:" Morris's Appeal, 7 Norris, 382; Coxe *v.* Freedley, 9 Casey, 124; Merrill *v.* Gore, 29 Maine, 346; 2 Parsons on Cont., 547, 560; Lacy *v.* Green, 3 Norris, 514, 518; Case *v.* Cushman, 3 S. & R., 544.

2. By the recognized rules of construction.

(1). Thompson's right to the timber is by way of exception to the grant, and this is to be so interpreted as to stand if possible; but the construction given by the court below would render this exception insensible and inoperative because it makes the exception larger than the grant: 4 Kent's Com., 468.

(2). The immediate context describes the land conveyed, as "the undivided half of grist mill . . . . . with the 200 acres of land connected therewith," and the exception is of "all the timber on *said* land."

(3). "Every exception or reservation is the act of the grantor, and shall therefore be construed most strongly against him, and most beneficially for the grantee:" 2 Saund., 166, 368, 10 Coke, 106; Case *v.* Haight, 3 Wend., 635; Whittaker *v.* Brown, 10 Wr. 199.

(4). The rule that a grant is to be taken most strongly against the grantor is of special application to a reservation or exception whereby there is a withholding of something from the grant: Klaer *v.* Ridgway, 5 Norris, 534; Grubb *v.* Grubb, 5 Out., 16.

If this view of the contract be correct, then this judgment cannot be sustained.

3. The evidence was submitted to the jury and they were told, with marked repetition, that they must be satisfied by "clear, precise and indubitable proof," and that this meant "beyond a doubt." They said they were satisfied of the contract, of possession taken under it, and that the parties understood it alike.

4. It was error for the court to instruct the jury that interest should be allowed on the purchase money in the event of a conditional verdict, for two reasons:

(1). Because there was express proof of a formal tender.

(2). Because a formal tender is not necessary to relieve a vendee from payment of interest on purchase money. Where there is proof of good faith and readiness to pay on his part and either laches or bad faith on the part of the vendor, it is at most a question for the jury whether interest shall be allowed, and there was such proof in this case: Fasholt *v.* Reed, 16 S. & R., 268; Kester *v.* Rockell, 2 W. & S., 365.

*McEnally (McCurdy* with him), for defendant in error.—
We state briefly the legal propositions which we consider applicable to the case, and cite some authorities to sustain them :

1. Thompson as plaintiff having the legal title, brings ejectment against Eberts the defendant.

2. Eberts in defence sets up an agreement for the purchase of the land and claims specific performance of the alleged agreement as a defence against the action of ejectment. In this case the defendant occupies the position of a plaintiff applying to a Court of Equity for specific performance of his alleged agreement, and the burden is upon him to make out such a case as will, in equity, entitle him to a decree of special performance.

3. By the article of Nov. 9th, 1880, Eberts was to furnish to Thompson in consideration of what he got under the agreement, all the timber on the land referred to in the article, and not merely such interest in the timber as Eberts bought of Thompson.

4. Eberts' own testimony shows clearly that he denied his liability to furnish Thompson all the timber as stated in the article, and that he was and is neither able nor willing to carry out that portion of his contract. And this is an absolute bar against any decree in his favor for specific performance, and against his making said article of agreement a defence against Thompson in this action of ejectment.

5. If the said written article of agreement is doubtful or uncertain in its terms, or if the parties did not meet understandingly when they made it, but at the time understood it differently, no specific performance would be decreed by a Court of Equity, and in such case it could not avail Eberts as a defence in this case.

6. Eberts does not rest upon the written agreement, but upon the written agreement as changed and modified by disputed parol testimony, in a material part, whereby the consideration would be greatly reduced. In other words, he claims to reform and change the written agreement by parol testimony which is disputed and denied by the plaintiff, and

then, have specific performance of the agreement as thus changed and modified. There is, however, nothing in the law to authorize a decree for specific performance under such a state of facts, or to allow Eberts to set up such a modified agreement as a sufficient defence against a recovery by Thompson in this action of ejectment.

7. Regarding the defendant's alleged contract as a written contract modified or changed by a parol contract,—the difficulties and objections to specific performance include all that can be said against a purely parol contract.

8. The court has power to mould the verdict according to law—even after it has been rendered by the jury. Especially is this so in equity matters, for in equity the court from the nature of its power and jurisdiction, has power to enter a judgment *non obstante veredicto* according to the justice and equity of the case : Byrne *v.* Grossman, 15 P. F. S., 310 ; Whiting & Co. *v.* Lake, 10 Norris, 349 ; Rowland *v.* Finney, 15 Norris, 192 ; Bower *v.* Fenn and wife, 9 Norris, 360. Power *v.* Orvis, 7 Out., 451.

Mr. Justice GREEN delivered the opinion of the court, May 24th, 1886.

We are of opinion that the learned court below was in error in the interpretation of the agreement in question in this case. Had its meaning been dependent upon extrinsic facts requiring the verdict of a jury to determine it, the construction contended for by the defendant should have prevailed, because the jury after a very careful charge found in the defendant's favor. Upon that aspect of the case the merits of the controversy must be considered as having been determined against the plaintiff and against his theory that he was entitled to have more timber than was to be found on the land sold. But the learned court holding, after the verdict, that a mistake was made in submitting the case to the jury at all, struck off the conditional part of the verdict and entered an absolute judgment for the plaintiff. We do not think this was in the power of the court, the action being ejectment and no question of law reserved, but we differ with the court upon a more radical question, and prefer to dispose of the cause upon our view of that subject. The agreement upon which the suit was founded stipulated for the sale of " the one undivided half of grist mill situated on Morgan run Boggs, with the 200 acres of land connected therewith, for the sum of twelve hundred dollars," etc. Undoubtedly the subject of the sale was " the undivided half" of the mill and 200 acres. This was all the plaintiff sold and it was, all the defendant bought. No other land could pass to the defendant under this agreement than

[Eberts v. Thompson.]

the undivided half of the premises described. Had the agreement stopped there it could not have been questioned that the defendant took only the undivided half of the mill and land, and of course he could only take the timber that stood upon that half. Certainly the defendant would have had no right to take the timber belonging to the other half owner, Smith, under this contract with Thompson. When, therefore, the agreement further provided that Ebert, the purchaser, was "to let said Thompson have all the timber on said land," he surely did not agree "to let" Thompson have the timber on Smith's half of the land. The words "to let" clearly mean "to allow," "to permit" that is, that Eberts, the purchaser, would permit Thompson to have the timber upon the land sold because that was something which Eberts *could* permit. No mere permission of his could possibly authorize Thompson to take the timber from Smith's half of the land, and there are no words in the agreement by which Eberts contracts that he will buy the timber on Smith's half so that Thompson may take that also. The expression "said land" necessarily refers to the subject matter previously described which was the undivided half of certain land, and according to our view of the instrument it means that Thompson the vendor, thereby had permission from Eberts the vendee, to take from the land sold the timber growing upon it down to a certain size. This was all that Eberts *could* give, and therefore it was all that Thompson could take under this contract. If it was intended that the timber that was owned by Smith should be included so as to pass to Thompson, the instrument should, and necessarily would, have contained some words expressive of the further obligation which then would have rested upon Eberts to acquire the right to Smith's timber and to give that also to Thompson. In the absence of any words expressing such a meaning we find it quite impossible to impute such an intent to the parties or to place such a construction upon the language actually employed. If Thompson had himself been the sole owner of the entire property and had made the identical agreement with Eberts which he did make, it would seem absurd to contend that the timber upon the unsold half of the land was divested from Thompson and vested in Eberts by anything contained in this paper. If it did have such a meaning Eberts would yet have to acquire from Thompson the right to the remaining half of the timber for no other purpose than to give it back to him. If it did not have such a meaning as to Thompson's ownership, it could not have as to Smith's. While parties might make so remarkable a contract as that it can not be done by implication.

These views dispose of the whole case and render unneces-

sary any discussion of the various matters outside the mere words of the instrument as evincive of the intention of the parties. The question of interest becomes unimportant in view of the verdict of the jury which cannot be changed.

The judgment of the court below is reversed and it appearing by the record that after verdict and before the time fixed for the payment of the purchase money the same, together with interest thereon, in all $363, was paid into court by the defendant, judgment is now entered in favor of the defendant, with leave to the plaintiff to take the said sum of $363 out of court upon his filing with the prothonotary a deed in fee simple, to be approved by the court, to the defendant for the premises described in the agreement of November 9th, 1880.